IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ISABEL BAUBLITZ, et al.      *
                             *
v.                           *
                             *    Civil Action No. WMN-10-819
PENINSULA REGIONAL MEDICAL   *
CENTER, et al.               *
                             *
  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *

**MEMORANDUM**

Before the Court is a motion to dismiss filed by Defendant Peninsula Regional Medical Center ("Peninsula"), Paper No. 5, and a motion for partial dismissal filed by Defendants John R. McLean, M.D. and John R. McLean, M.D. & Associates, P.A. (hereinafter collectively "McLean") Paper No. 12. Also pending are motions to sever filed by Peninsula and McLean. Paper Nos. 15 and 16 (respectively). The motions are fully briefed. Upon review of the motions and the applicable case law, the Court determines that no hearing is necessary, Local Rule 105.6, and that all motions will be denied.

**I. BACKGROUND**

This case arises out of allegations concerning the medical practice of Defendant McLean. McLean was a cardiologist with privileges at Defendant Peninsula and it is alleged that for at least the last five years McLean was performing a vast number of unnecessary cardiac catheterization and stent placement

surgeries in Peninsula's Cardiac Catheterization Lab. Plaintiffs assert that McLean dramatically overstated the findings from cardiac stress tests and diagnostic imaging studies to convince his patients to undergo these unnecessary procedures. Plaintiffs in this action include thirteen patients who underwent these alleged unnecessary procedures. Also joined as Plaintiffs are the spouses of some of those patients.

To support their claims against Peninsula, Plaintiffs allege that the nurses, technicians, and staff in Peninsula's Cardiac Catheterization Lab "worked hand-in-hand with Dr. McLean, knew or should have known what he was doing, participated in the unnecessary and non-indicated procedures, and failed to prevent or report his actions." Compl. ¶ 3. They also allege that the Director of Peninsula's Catheterization Lab, his staff, and other agents and employees of Peninsula were responsible for reviewing McLean's action as part of the hospital's credentialing and privileging processes. Despite the fact that these individuals knew or should have known that McLean was routinely performing unnecessary and non-indicated procedures, Peninsula continued to extend privileges to McLean and rewarded him with large blocks of favorable scheduling time.

Plaintiffs filed suit in this Court on April 2, 2010, asserting this Court's jurisdiction on the basis of diversity of

citizenship.[1]  The Complaint is 244 pages long and contains 98 counts which include separate counts of negligence and civil conspiracy against McLean and Peninsula as to each patient plaintiff, as well as separate counts for loss of consortium.

Defendant Peninsula has moved to dismiss all counts against it.  Defendant McLean has moved to dismiss only the civil conspiracy counts against him.  Defendants have also filed motions to sever, requesting that the claims related to each patient be tried individually.  Defendant Peninsula also suggests in a footnote in its motion to dismiss that, if the claims against it are not dismissed, the Court should also sever the trial of those claims from the trial of the claims against McLean.  Peninsula's Mot. to Dismiss at 16 n.10.

## II. MOTION TO DISMISS

### A. Legal Standard

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, --- U.S. ----, ----, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference

---

[1] Peninsula is a Maryland hospital and the Complaint names only patients from Virginia and Delaware.

that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949 (citing Twombly, 550 U.S. at 556). "Detailed factual allegations" are not required, but allegations must be more than "labels and conclusions," or "a formulaic recitation of the elements of a cause of action[.]" Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 555). "[O]nce a claim has been stated adequately," however, "it may be supported by showing any set of facts consistent with the allegations in the complaint." Twombly, 550 U.S. at 563. In considering such a motion, the court is required to accept as true all well-pled allegations in the Complaint, and to construe the facts and reasonable inferences from those facts in the light most favorable to the plaintiff. Ibarra v. United States, 120 F.3d 472, 474 (4th Cir. 1997).

### B. Negligence Claim Against Peninsula

As Peninsula notes, Plaintiffs' negligence claims against it are somewhat broad and suggest several different possible theories of liability. The Complaint asserts as to each patient that Peninsula, directly and by and through its agents and employees, was negligent in the following ways: by allowing McLean to perform the medically unnecessary procedures; by failing to revoke or suspend his privileges or stopping him from using the Catheterization Lab prior to the patient's procedures; by assisting in the performance of the unnecessary procedures;

4

and by failing to adequately monitor and supervise McLean as part of the hospital's ongoing privileges and oversight processes. See, e.g., Compl. ¶ 44. In opposing Peninsula's motion to dismiss, Plaintiffs clarify, somewhat, the nature and scope of their negligence theories. First, Plaintiffs suggest that there is a duty on the part of Peninsula to protect its patients from harm based upon the Restatement (Second) of Torts §§ 315 and 318. Second, Plaintiffs suggest that Peninsula can be held liable for "negligent credentialing."[2]

In urging the Court to reject Plaintiffs' "duty" theory, Peninsula attempts to characterize Plaintiffs as presenting the issue of "whether a nurse or technician who allegedly assisted Dr. McLean in the performance of an unnecessary procedure on another patient (not a Plaintiff) owed a duty to future, unidentified and as yet unknown patients of Dr. McLean." Peninsula's Mot. at 17.

> In other words, assuming that Nurse 'Jones' knew or should have known at some point in time before each Plaintiffs' procedure that Dr. McLean had "regularly and repeatedly performed unnecessary procedures" as alleged (Complaint at ¶ 44), did Nurse 'Jones' owe a duty to Dr. McLean's future, unidentified and unknown patients to "report" his or her concerns? Is nurse 'Jones'' purported knowledge somehow imputed to nurse

---

[2] While at the same time arguing that Maryland would recognize a claim for negligent credentialing, and that they have stated aclaim for negligent credentialing, Plaintiffs maintain that they "do not specifically assert 'negligent credentialing' in the Complaint . . . ." Opp'n to Peninsula's Mot. at 10.

5

> 'Smith,' who cares for a future patient? No such duty
> of protection exists. A nurse or technician who
> hypothetically assists Dr. McLean in his performance
> of an unnecessary procedure in 2004 does not owe a
> tort duty to a person who is never even admitted to
> the hospital until 2006.

Id. at 18.[3]

The Court finds several flaws in Peninsula's characterization and rebuttal of Plaintiffs' duty argument. First, Peninsula's "future unknown patients" characterization ignores the fact that Plaintiffs allege that Peninsula's employees actively participated in procedures involving Plaintiffs when they knew, or should have known, that those procedures were unnecessary. Plaintiffs allege that Peninsula's nurses and technicians were physically present during the catheterizations and other procedures, had access to and reviewed the medical records and charts of each patient, and conducted pre-procedure work-ups of each patient. Compl. ¶ 24.

---

[3] In its motion to dismiss, Peninsula cites to a number of Maryland court decisions discussing § 315 and the potential liability for acts of third parties. Peninsula's Mot. to Dismiss at 21-26 (citing Scott v. Watson, 359 A.2d 548 (Md. 1976); Furr v. Spring Grove State Hosp., 454 A.2d 414 (Md. Ct. Spec. App. 1983); Lamb v. Hopkins, 492 A.2d 1297 (Md. 1985); Valentine v. On Target, Inc., 727 A.2d 947 (Md. 1999); Pendleton v. State, 921 A.2d 196 (Md. 2007); and Ashburn v. Anne Arundel County, 510 A.2d 1078 (Md. 1986)). Peninsula cites these cases to support its proposition that, for there to be a duty, the victim must be readily identifiable. For the reasons stated below, the Court finds that the allegations in the Complaint could support the inference that the victims were readily identifiable. Furthermore, the Court finds the facts of these cases readily distinguishable from the case at bar.

6

Either through this participation in a particular Plaintiff's procedure, or from participation in prior procedures with McLean, it is alleged that these Peninsula employees knew or should have known that the procedure to which that Plaintiff was being subjected and in which they were participating was unnecessary.

Second, Peninsula's "Nurse Smith/Nurse Jones" illustration artificially compartmentalizes the knowledge of Peninsula's employees such that the knowledge of each nurse or technician is only known to that particular nurse or technician. If there is a duty to protect patients from malpracticing physicians, there must be a concomitant duty to have in place a method through which information about those practitioners is shared throughout the organization.

That still leaves open the question as to whether Peninsula owed a duty to Plaintiffs to prevent McLean from doing them harm. Plaintiffs find such a duty in Sections 315 and 318 of the Restatement (Second) of Torts. Section 315 provides:

> There is no duty so to control the conduct of a third person as to prevent him from causing physical harm to another unless
>
> (a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or

>       (b) a special relation exists between the actor and
>       the other which gives to the other a right to
>       protection.[4]

The special relationships between the actor and the third person which can give rise to a duty are set forth in Sections 316 to 319.[5] The potential relationships between the actor and the person to be protected that can give rise to a duty are set forth in Sections 314A and 320.[6]

Section 318, relied upon by Plaintiffs, governs the duty of a landowner to control the conduct of a licensee. It provides as follows:

> If the actor permits a third person to use land or
> chattels in his possession otherwise than as a
> servant, he is, if present, under a duty to exercise
> reasonable care so to control the conduct of the third
> person as to prevent him from intentionally harming
> others or from so conducting himself as to create an
> unreasonable risk of bodily harm to them, if the actor
> (a) knows or has reason to know that he has the
> ability to control the third person, and (b) knows or

---

[4] Section 315 is a special application of the general rule set forth in Section 314 which states, "[t]he fact that the actor realizes or should realize that action on his part is necessary for another's aid or protection does not of itself impose upon him a duty to take such action."

[5] Section 316 provides that a parent has a duty to control the conduct of his minor child; Section 317 establishes a master's duty to control the conduct of his servant; Section 318 sets forth the duty of a possessor of land or chattels to control the conduct of a licensee; and Section 319 deals with the duty of those in charge of persons having dangerous propensities.

[6] Section 314A sets out, inter alia, the duty of a possessor of land to invitees. Section 320 sets out the duty of a person having custody of another to control the conduct of third persons.

> should know of the necessity and opportunity for exercising such control.

Comment d to § 318 states,

> If the third person permitted to use the actor's chattel persistently uses it in a manner dangerous to others, the possessor may be required to terminate his consent to its use in order to escape liability for any harm done by the further dangerous use of the chattel. By failing to terminate his consent to its use, he in effect permits the other to continue his use knowing that he is likely to use the chattel in a manner dangerous to others.

Plaintiffs reason from Section 318 that if Peninsula permitted McLean to continue to uses Peninsula's facilities in a manner harmful to his patients, while knowing that he is likely to use those facilities in a harmful manner, it cannot escape liability.

While certainly not the typical case that might arise under Section 318, the Court finds Plaintiffs' negligence claims sufficiently analogous to allow them to go forward, at least at this stage in the litigation. Peninsula offers little to counter Plaintiffs' argument. In its reply memorandum, Peninsula makes the curious argument that, by relying on Section 318 of the Restatement (Second) of Torts, Plaintiffs "applied an incorrect duty analysis and failed to recognize the clear state of Maryland law. "Maryland courts," declares Peninsula, "have clearly established that Restatement Sections 315 and 319 'reflect the common law of this State' and 'outline the

9

appropriate analytical framework for determining whether an actor has a duty to control a third person.'" Peninsula's Reply at 2 (quoting <u>Lamb</u> 492 A.2d at 1302 (Md. 1985)).

The Maryland Court of Appeals in <u>Lamb</u>, however, did not adopt Section 319 to the exclusion of Section 318, but simply discussed and applied Section 319 because it was "the sole provision [among Sections 316 to 319] that has any conceivable application to this case." <u>Lamb</u>, 492 A.2d at 1301. The court concluded its discussion by stating, "we expressly adopt Section 319 as the law of this State governing the duty <u>of those in charge of persons having dangerous propensities</u>." <u>Id.</u> at 1302 (emphasis added). The clear implication of the discussion in <u>Lamb</u> of the general framework of Sections 314 through 319 is that all of these sections reflect the common law of Maryland. <u>See</u> <u>Lamb</u> at 1302 ("By virtue of our citation to Section 315 [in <u>Scott</u>] we implicitly approved the analytical framework embodied within that section and, inferentially, § 319.").

The second negligence theory encompassed in each of Plaintiffs' negligence counts, "negligent credentialing," is a separate tort with separate elements that must be pled and proved. While no Maryland court has yet to recognize a cause of

10

action for negligent credentialing,[7] states that have done so require the following elements:

> (1) the hospital granted privileges to a physician;
>
> (2) the physician was unqualified or incompetent;
>
> (3) the hospital knew or should have known the physician was unqualified or incompetent;
>
> (4) the physician was negligent when treating the patient; and
>
> (5) the physician's negligence was a substantial factor in producing harm to the patient.

Johnson v. Misercordia Community Hospital, 301 N.W. 2d 156 (Wis. 1981). Thus, the initial focus for this cause of action is on the credentialing process.

The vast majority of states that have considered the issue have concluded that negligent credentialing is a valid cause of action. See Larson v. Wasemiller, 738 N.W.2d 300, 306-07 n.3 (observing that at least 27 states had previously recognized the tort and collecting cases) (Minn. 2007). In one of the most recent cases to recognize the cause of action, Archuleta v. St.

---

[7] Plaintiffs cites to two decisions from Maryland appellate court that they opine "appear to have accepted negligent credentialing as a theory of liability. Opp'n at 10 (citing Goodwich v. Nolan, 650 A.2d 296 (Md. Ct. Spec. App. 1994) and Goodwich v. Nolan, 680 A.2d 1040 (Md. 1996)). While the underlying action included a claim for negligent credentialing, the Court of Special Appeals decision, which was affirmed by the Court of Appeals, simply held that a discovery order in the action was not immediately appealable by way of a writ of mandamus. The decisions did not touch on the viability of the underlying negligent credentialing claim.

Mark's Hosp., Nos. 20080580, 20080572, 2010 WL 1929556 (Utah May 14, 2010), the Supreme Court of Utah summarized the reasons the tort has met with such widespread acceptance:

> negligent credentialing is "simply the application of broad common law principles of negligence," and is a natural extension of torts such as negligent hiring. There are strong policy reasons for recognizing the cause of action, including the foreseeability of harm to patients where hospitals fail to properly investigate a doctor's qualifications and the "superior position [of hospitals] to monitor and control physician performance."

Id. at *4 (quoting or citing Larson, Johnson and Domingo v. Doe, 985 F. Supp. 1241, 1245 (D. Haw. 1997)).

Peninsula's primary argument as to why Maryland would not join the vast majority of states and recognize the cause of action is that such a cause of action would "for all practical purposes" be precluded by a Maryland statute that makes privileged and non-discoverable the proceedings and records of medical review committees, including those of credentialing committees. Mot. at 10.[8] This statute, Peninsula argues, would shield from discovery and admissibility at trial the core evidence that would be used to support or defend a claim of negligent credentialing. Peninsula also points to a Maryland statute that provides partial immunity from civil liability to those that participate in medical review committees. Id. at 13

---

[8] That medical review committee privilege is now codified at Md. Code Ann., Health Occ. § 1-401(d) and (e)).

12

(citing Md. Code Ann., Health Occ. § 1-401(F)(1) and Md. Code Ann., Cts. & Jud. Proc. § 5-637).  Peninsula reasons that, if the individuals that serve on the credentialing committee cannot be held liable, then neither can the hospital for which those individuals made the credentialing decision.

These same arguments have been raised and rejected by courts that have recognized a cause of action for negligent credentialing in states with similar medical review privilege and immunity statutes.  See, e.g., Archuleta, 2010 WL 1929556 at *2-*4; Larson, 738 N.W.2d at 309-312.  As to the effect of the medical review privilege on the availability of relevant evidence, courts have noted that liability is imposed based upon what was actually known or what should have been known at the time of the credentialing decision.  Thus, while the privilege would prevent the introduction of what was actually produced to the credentialing committee, the same information, provided it is available from the original source, can be presented to the jury to aid it in determining what should have been known by the committee.  Larson, 738 N.W.2d at 310.

As to Peninsula's argument based on the partial immunity extended to individuals on credentialing committees, the Court disagrees that this immunity is also somehow extended to the hospital.  "As a general rule, followed by a vast majority of American courts, the master remains liable for the servant's

13

conduct even though the servant is himself not liable because of a personal immunity." James v. Prince George's County, 418 A.2d 1173 (Md. 1980) (citing, inter alia, 2 F. Harper & F. James, The Law of Torts § 26.17, at 1427 n. 6; Restatement (Second) of Agency § 217 (1958); W. Seavy, Handbook of the Law of Agency § 93, at 167 (1964)). The cases relied upon by Peninsula for the proposition that "[u]nder Maryland law, if an agent cannot be liable to a third party, then an alleged principal is relieved of any liability," Mot. at 13, were not decided in the context of immunity.[9] In both cases, the liability of the principal was predicated solely on the basis of respondeat superior and the courts held that once the agent was relieved of liability (in Condon by entering a release and in Barone by being found blameless by a jury) there could be no liability on the part of the principal.

The Court concludes that Maryland would recognize a cause of action for negligent credentialing and that Plaintiffs have sufficiently alleged such a cause of action. They allege that the Director of the Catheterization Lab and other hospital staff who were responsible for the hospital's credentialing and privileging policies were aware or should have been aware that McLean was routinely performing unnecessary procedures and yet

---

[9] The cases cited were Anne Arundel Med. Center, Inc. v. Condon, 649 A.2d 1189 (Md. Ct. Spec. App. 1994) and Barone v. Winebrenner, 55 A.2d 505 (Md. 1947).

14

continued to extend privileges to him. Plaintiffs also allege that they were harmed by McLean's negligent conduct.

## C. Civil Conspiracy

A claim for civil conspiracy requires proof of the following elements:

> 1) A confederation of two or more persons by agreement or understanding;
>
> 2) some unlawful or tortious act done in furtherance of the conspiracy or use of unlawful or tortious means to accomplish an act not in itself illegal; and
>
> 3) Actual legal damage resulting to the plaintiff.

Lloyd v. General Motors Corp., 916 A.2d 257 (Md. 2007). Plaintiffs have alleged that "by agreement or understanding" Peninsula provided McLean with the medical facilities and assistance need to perform the unnecessary medical procedures to Peninsula's and McLean's mutual financial benefit and to the harm of the Plaintiffs. Compl. ¶ 48.

Noting that the Complaint allows that Peninsula may have only been negligent in allowing McLean to continue his practice and, perhaps, did not know but only "should have known" that McLean was performing unwarranted procedures, Defendants argue that Plaintiffs have not alleged a "'unity of purpose or a common design and understanding, or a meeting of the minds in an unlawful arrangement.'" Peninsula's Reply at 7 (quoting Cavalier Mobile Homes, Inc v. Liberty Homes, Inc., 454 A.2d 367,

15

372 (Md. Ct. Spec. App. 1983)). This Court would agree that one cannot agree or conspire to be negligent. See Sonnenreich v. Philip Morris, Inc., 929 F. Supp. 416, 420 (S.D. Fla. 1996) (observing that "[l]ogic and case law dictate that a conspiracy to commit negligence is a non sequitur"). Nonetheless, as Plaintiffs have pled in the alternative that Peninsula had actual knowledge that McLean was performing unnecessary procedures and yet agreed to let him to continue to use Peninsula's Catheterization Lab, the Court will not dismiss the conspiracy counts at this time.

### III. MOTIONS TO SEVER

The Court finds Defendants' request that the claims be severed to deal separately with the claims arising from each patient's treatment and Peninsula's suggestion that the claims against it be severed from the claims against McLean are premature. The prejudice to Defendants if the claims are tried together or the prejudice to Plaintiffs' case if they are separated in some way can be better gauged when the Court has a better sense of the evidence and claims that will be presented to the jury. Accordingly, the Court will deny these requests for severance, without prejudice to Defendants re-raising the issue after the completion of discovery and resolution of any dispositive pretrial motions.

### IV. CONCLUSION

For the above stated reasons, Defendants' motions to dismiss, Paper Nos. 5 and 12, and Defendants' motion to sever, Paper Nos. 15 and 16 will be denied. A separate order will issue.

```
                          _____/s/_____
                          William M. Nickerson
                          Senior United States District Judge
```

Dated: August 12, 2010